Elaina MALINOWSKI, Individually and as Administratrix of the Estate of Michael Malinowski, a/k/a Michael Anthony Chaffee–Malinowski

v.

UNITED PARCEL SERVICE, INC. et al.

No. 98–81–Appeal.

Supreme Court of Rhode Island.

March 24, 1999.

Ronald J. Resmini, Barrington, Paul S. Cantor, Providence, for Plaintiff.

John R. Mahoney, Providence, for Defendants.

Before WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

This case concerns a tragic event resulting in the death of a fourteen-year-old boy who was struck and killed by a tractor-trailer truck. Following the close of evidence, the trial justice charged the jury on the sudden emergency doctrine and the jury returned a defendants' verdict. We ordered the parties to appear before this Court in order to show cause why this appeal should not be summarily decided. None having been demonstrated, we proceed to vacate the judgment at this juncture.

In the afternoon of December 27, 1991, Michael Malinowski (Michael), a fourteen-year-old boy, was walking westward on a sidewalk adjacent to Taunton Avenue in East Providence. With Michael were three friends—Alfred, Richard, and Geoffrey. As the four boys proceeded alongside Taunton Avenue, they began to engage in certain youthful activities, specifically, wrestling with each other and jumping around. Richard eventually ran ahead of his fellow friends and, as he neared a Boston House of Pizza sign, leaped to touch the sign. The tragic chain of events continued when Alfred approached the same pizza sign and attempted to touch the sign "a little higher than [Richard] could." In the midst of Alfred's jump, however, Michael kicked Alfred in the leg. In turn, Alfred reacted by pushing an off-balanced Michael, who began to fall backward and attempted to regain his composure by swinging out his right arm. Tragically, Michael did not regain his balance, and when his right arm landed on Taunton Avenue, it was almost instantaneously crushed by the wheels of the tractor-trailer's cab section. Michael was then struck and killed by the tractor-trailer's rear wheels.

The driver of the UPS tractor-trailer truck, co-defendant Stephen F. Hogan (Hogan), testified concerning his recollection of events. Hogan stated that after stopping at a red light, he proceeded westbound on Taunton Avenue and accelerated the tractor-trailer to twenty or twenty-five miles per hour before coming to a rolling stop at the traffic light in front of the entrance to the Wampanoag Mall. After passing through this traffic light, Hogan approached a Burger King restaurant location where, for the first time, he observed "three or four boys horsing around" at a distance of approximately 300 feet. Hogan testified that when he first noticed the youngsters, he was traveling in the right-hand lane at approximately fifteen miles per hour. Upon perceiving the children, however, Hogan maintained that he slowed the tractor-trailer and sounded the vehicle's horn,[1] although he also admitted that he was unable to establish eye contact with the youths and, due to left lane traffic, was forced to travel in the right-hand lane nearest to the children. As the tractor-trailer passed the Boston House of Pizza sign, Hogan observed an unknown motion outside the vehicle, and when Hogan later peered into the right-hand mirror, he first realized what had occurred.

On September 27, 1993, Michael's mother and administratrix of his estate (plaintiff) instituted this action for wrongful death. At the close of testimony, the trial justice charged the jurors on the sudden emergency doctrine. In relevant portion he stated:

"If you find that the defendant, Stephen Hogan, was confronted with a sudden emergency, which he could not have reasonably foreseen, then his failure to anticipate it and to take effective precautions against it is not negligence.

"*It is a fundamental principle of law that one is not bound to anticipate another's negligence.* Even if a collision occurs, that doesn't automatically mean that the defendant is liable or he or she is negligent. If you find the defendant, in effect, was con-

---

1. We note that Richard's and Alfred's trial testimony indicated that they never heard a horn. Geoffrey did not testify. Moreover, we note that

Hogan testified that as the tractor-trailer approached the boys, they discontinued their horseplay.

fronted with an emergency, which was not created by him, but by some other person in this case, *and that he acted previously thereto with ordinary care,* and that when so confronted suddenly, he did everything that could reasonably be expected of a prudent person under the circumstances in order to avoid the collision, then his failure to avoid it under those circumstances would not constitute negligence." (Emphases added.)

Following this instruction, the jurors returned a verdict in favor of Hogan and UPS (collectively defendants) and this appeal ensued. We reverse.

We commence our analysis by examining the instant sudden emergency instruction. Previously, in *Kolc v. Maratta,* 108 R.I. 623, 278 A.2d 410 (1971), we had occasion to review a similar instruction wherein a child darted from a sidewalk adjacent to Mineral Spring Avenue and collided with a vehicle driven by the defendant-operator. The trial justice instructed the jurors that: " '[i]f you find that the Defendant operator was confronted with an emergency not of her own making *that prior thereto that she was in the exercise of due care* and that when so confronted she did everything which a reasonable prudent person would be expected to do under the circumstances or similar circumstances, then your verdict must be for the Defendant.' " *Id.* at 624, 278 A.2d at 411. (Emphasis added.) In reviewing the *Kolc* instruction, we warned that the trial justice's charge approached "reversible error per se." *Id.* at 625, 278 A.2d at 411. In particular, we noted that the instruction " 'that prior thereto that she was in the exercise of due care' " tended to negate the duty to operate a motor vehicle with due care at all times. *Id.*

■ Similarly, the trial justice's instruction in this case closely parallels the *Kolc* instruction, which we stated approached "reversible error per se." Here, the trial justice stated in part that "[i]f you find the defendant, in effect, was confronted with an emergency * * * and *that he acted previously thereto with ordinary care* * * * then his failure to avoid [the collision] under those circumstances would not constitute negligence." (Emphasis added.) Like *Kolc,* this instruction tends to negate the requirement of operating a motor vehicle with due care at all times and therefore was erroneous. We recognize "that individuals confronted with sudden and unexpected events demanding immediate action cannot be held to the same standard of care required of one in no such predicament." *Roth v. Hoxsie's Arco Service, Inc.,* 121 R.I. 428, 432, 399 A.2d 1226, 1228 (1979). However, in contrast to the implication that arises from the emphasized portion of the instant jury instruction, "a standard of reasonableness is still applicable," even though the exigent circumstance may be considered in determining the precise level. *Id.*

■ Moreover, we take this opportunity to examine another aspect of the trial justice's instruction, specifically the portion of the charge in which he stated that "[i]t is a fundamental principle of law that one is not bound to anticipate another's negligence." The defendants suggest that this maxim was proper and precludes a finding of liability when, as here, a defendant-operator is confronted with a sudden emergency that was not reasonably foreseeable and that was not of his or her own making. This instruction appears to have been extracted in part from our opinion in *Lamarque v. Masse,* 76 R.I. 382, 387–88, 71 A.2d 100, 102–03 (1950), wherein we noted that the defendant-operator was entitled to a directed verdict because he could not reasonably have been expected to have foreseen that after driving downhill and around a curve, he suddenly would have been confronted head-on with an oncoming vehicle. *Cf. Dembicer v. Pawtucket Cabinet & Builders Finish Co.,* 58 R.I. 451, 457, 193 A. 622, 625 (1937) ("The driver of an automobile, who has the right of way at an intersection and is himself in the exercise of due care, is entitled to assume, in the absence of notice inconsistent with this assumption, that the driver of another automobile * * * will observe this rule, as well as all other rules governing traffic at such places.").

This Court has long held that "[t]he degree of care required from * * * [a] driver at any given time or place varies with the conditions reasonably to be observed * * * and increases in proportion to the increased danger

reasonably to be apprehended." *Dembicer,* 58 R.I. at 455, 193 A. at 624. *See also* W. Page Keeton et al., *Prosser and Keeton on The Law of Torts* § 34 at 208 (5th ed.1984). In other words, "[t]he greater the appreciable danger, the greater the degree of care necessary to constitute due or ordinary care." *Dembicer,* 58 R.I. at 455, 193 A. at 624.

To determine the standard of care that motor vehicle operators owe to children who are in or near a roadway, evidence may be gleaned from G.L.1956 § 31–14–3 and G.L. 1956 § 31–18–8. In pertinent part these sections state:

"31–14–3. **Conditions requiring reduced speed.**—The driver of every vehicle shall, consistent with the requirements of § 31–14–1,[2] drive at an appropriate reduced speed * * * when [a] special hazard exists with respect to pedestrians or other traffic or by reason of weather or highway conditions."

"31–18–8. **Due care by drivers.**—[E]very driver of a vehicle shall exercise due care to avoid colliding with any pedestrian or any person propelling a human-power vehicle upon any roadway, and shall give an audible signal when necessary *and shall exercise proper precaution upon observing any child* or any obviously confused, intoxicated, or incapacitated person." (Emphasis added.) *See also Kolc,* 108 R.I. at 627, 278 A.2d at 412 (reasonably prudent person should foresee likelihood of a child darting across the street).

■ In light of the aforementioned standards, we are of the opinion that the maxim that one is not bound to anticipate another's negligence is at odds with the duties placed upon drivers to "exercise due care to avoid colliding with any pedestrian," and to "exercise proper precaution upon observing any child." Section 31–18–8. Consequently, we disavow the principle that drivers are under no duty to anticipate another person's negli-

gence when that other person is a minor who is in or near a roadway. Moreover, we reject defendants' argument that the trial justice properly refused to instruct the jury in accordance with § 31–18–8 because by that statute's own terms it applies only "to pedestrians upon a roadway not a sidewalk." In doing so we note that § 31–18–8 prescribes a duty to all drivers "to avoid colliding with any pedestrian *or* any person propelling a human-power vehicle upon any roadway." (Emphasis added.) Therefore, the trial justice's refusal to instruct the jury on § 31–14–3 and § 31–18–8 was error.

■ Lastly, we consider the trial justice's sudden emergency charge to the jury. We have stated on several occasions that a sudden emergency instruction is justified only when one is confronted with an unforeseeable emergency not caused by his or her own negligence. *See, e.g., Pazienza v. Reader,* 717 A.2d 644, 645 (R.I.1998); *Roth,* 121 R.I. at 432, 399 A.2d at 1228. For instance, in *Maklar v. Greene,* 106 R.I. 405, 261 A.2d 15 (1970), we stated that:

"the doctrine of sudden emergency has no application unless the occurrence of the emergency condition is one that the defendant could not reasonably have foreseen. The doctrine does not apply if a defendant may be reasonably charged with foreseeing the occurrence of an emergency condition." *Id.* at 407–08, 261 A.2d at 17. *See also Kolc,* 108 R.I. at 626, 278 A.2d at 412.

■ Applying this principle to Hogan's own testimony it is patently obvious that Hogan was confronted with a situation that lacked the spontaneity required to be termed a "sudden emergency." Most notably, Hogan testified that he observed three or four boys "horsing around" from a distance of approximately 300 feet. *Cf. Kolc,* 108 R.I. at 626, 278 A.2d at 411 (no sudden emergency where defendant-operator observed children from 200 feet). Moreover, it is apparent that Hogan perceived the danger because he

**2.** General Laws 1956 § 31–14–1, entitled "**Reasonable and prudent speeds**," provides:

1 "No person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing. In every event, speed shall be so controlled as may be necessary to avoid colliding with any person, vehicle, or other conveyance on or entering the highway in compliance with legal requirements and the duty of all persons to use due care."

slowed the vehicle, sounded the horn, and even attempted to make eye contact with the boys. In addition, Hogan testified that had the left-hand lane been clear of traffic, he would have changed lanes because the left-hand lane "would be the path of least resistance." While this is not to say that on remand a reasonable jury could not find defendants in the exercise of due care, we are of the opinion that Hogan's actions "preclude that which happened from qualifying as a sudden emergency." *Id.* at 626, 278 A.2d at 412. *See, e.g., Pazienza v. Reader,* 717 A.2d 644 (R.I.1998); *Lamarque v. Masse,* 76 R.I. 382, 71 A.2d 100 (1950).

Therefore, for the foregoing reasons, we conclude that under the instant set of circumstances the maxims "that one is not bound to anticipate another's negligence" and "that [if Hogan] acted previously thereto with ordinary care" were erroneous. Furthermore, the trial justice's instruction on the sudden emergency doctrine, as well as the trial justice's failure to instruct on § 31–14–3 and § 31–18–8, were also error. The plaintiff's appeal is sustained. The judgment appealed from is vacated and the papers in this case are remanded to the Superior Court for further proceedings consistent with this opinion.