**Elaina MALINOWSKI, Individually and as Administratrix of the Estate of Michael Malinowski, a/k/a Michael Anthony Chaffee–Malinowski**

v.

**UNITED PARCEL SERVICE, INC., et al.**

**No. 00–305–Appeal.**

Supreme Court of Rhode Island.

March 11, 2002.

---

52 ■

Ronald J. Resmini, Paul S. Cantor, Providence, for Plaintiff.

John R. Mahoney, Providence, for Defendant.

Present: WILLIAMS, C.J., LEDERBERG, BOURCIER, FLANDERS and GOLDBERG, JJ.

## OPINION

WILLIAMS, Chief Justice.

This case concerns a horrific accident that resulted in the death of a young man, Michael Malinowski (Michael). His mother, the plaintiff Elaina Malinowski (plain-

tiff), valiantly sought to recover for her loss by filing a wrongful death action. She is before this Court for a second time, after a second jury rendered its verdict for the defendants. She alleges that the trial justice committed a variety of errors. However, we must affirm the decisions of the trial justice and the judgment of the Superior Court because the resolution of the issues raised on appeal do not warrant a third trial.[1]

I

### Facts and Travel

In 1991, plaintiff's fourteen-year-old son, Michael, was tragically struck and killed by a tractor-trailer truck driven by defendant Stephen F. Hogan (Hogan),[2] an employee of the United Parcel Service, Inc. (UPS) (collectively referred to as defendants). Approximately two years later, plaintiff filed a wrongful death action in the Superior Court. The first jury trial resulted in a verdict for defendants, and plaintiff appealed. On appeal, this Court held that the jury instruction on the sudden emergency doctrine erroneously permitted the jury to absolve Hogan from the duty to operate his vehicle with due care at all times. *See Malinowski v. United Parcel Service, Inc.*, 727 A.2d 194, 195–96 (R.I. 1999) (*Malinowski I*). Further, we held that Hogan had not been faced with a sudden emergency before striking Michael. *See id.* at 197. On remand, we instructed the trial justice to include jury instructions addressing the standard of care that motor vehicle operators owe to children who are in or near a roadway provided by G.L.1956 § 31–14–3 and G.L.1956 § 31–18–8.

1. In the words of Abraham Lincoln, we note that "[i]n this troublesome world, we are never quite satisfied." Letter to Mary Todd Lincoln, in *A Treasury of Lincoln Quotations* 5 (April 16, 1848) (Fred Kerner ed.1996).

2. Before the start of the second trial, the parties agreed to dismiss the case against Hogan.

After the second trial, the jury again returned a verdict for defendants. The trial justice denied plaintiff's motions for judgment as a matter of law and a new trial. The plaintiff timely appealed.[3]

## II

### Admissibility of the Tachograph

The plaintiff contends that the trial justice erred by excluding the actual speed recording from the tachograph. A tachograph is a recording device located in many commercial trucks that charts the movement and speed of the vehicle. *See* Karen Smith Cooney, Comment, *The Evidentiary Use of Tachograph Charts in Civil Litigation*, 92 Dick. L.Rev. 483, 483 (1988). In the legal context, tachograph recordings are commonly used to prove the speed at which a vehicle was traveling at the time of an accident. *See id.*

UPS required the installation and operation of a tachograph in each of its vehicles. Thus Hogan's truck was equipped with the device on the day of the accident. After the accident, UPS dispatch supervisor James Kershaw (Kershaw) drove the truck to the East Providence police station. While at the station, Kershaw removed the tachograph disk (containing all relevant recordings) and placed it in his pocket. The tachograph revealed that Hogan was driving approximately thirty-two miles per hour at the time of the accident. However, before the accident, UPS allegedly found that the tachograph gear apparatus was defective. At the second trial, Kershaw testified that a part had been ordered to correct the problem. It was UPS's position that because of the defec-

tive gear, the tachograph could not have accurately recorded the truck's speed on the day of the accident. Thus UPS challenged the admissibility of the tachograph by filing a motion *in limine*.

The parties agreed that any testimony about the patterns of acceleration and deceleration recorded by the tachograph were admissible. The trial justice reserved ruling on the admissibility of the actual speed of the truck as recorded by the tachograph until such evidence was proffered in the context of the trial. The trial justice's opinion was that to prove that the "missing" gear was essential to the accuracy determination, and the foundation, plaintiff may need to provide expert testimony to support her theory. The plaintiff argued that because the original defective gear was missing she could not possibly establish the accuracy of the speed recording.

■ "It is well established that 'the admissibility of evidence is within the sound discretion of the trial justice, and this Court will not interfere with the trial justice's decision unless a clear abuse of that discretion is apparent.'" *ADP Marshall, Inc. v. Brown University*, 784 A.2d 309, 314 (R.I.2001) (quoting *Bourdon's, Inc. v. Ecin Industries, Inc.*, 704 A.2d 747, 758 (R.I.1997)). "Furthermore, 'this standard is applicable to a trial justice's determinations with respect to both the relevancy of proffered evidence and the adequacy of the foundation laid for its admission.'" *Id.* (quoting *Bourdon's, Inc.*, 704 A.2d at 758).

■ In an attempt to have the trial justice reconsider the tachograph speed

---

**3.** After plaintiff filed her reply brief, as permitted by Article I, Rule 16(c) of the Supreme Court Rules of Appellate Procedure, defendant then responded with its reply to plaintiff's reply brief, to which plaintiff filed an additional reply. Neither the response of de-

fendant nor plaintiff's subsequent reply brief are permitted by Rule 16(c) absent leave of the Court and thus we shall not consider arguments made within those writings in our resolution.

evidence, plaintiff's attorney indicated to the court that he intended to elicit the information from Kershaw. At that time, the trial justice ruled that the speed recording from the tachograph was inadmissible for lack of adequate foundation and accompanying expert testimony to ensure the accuracy of the recording. In doing so, the trial justice fairly noted that all the evidence pointed toward the inaccuracy of the tachograph recording. Further, plaintiff did not produce an expert to testify in support of her theory that the "missing" gear in question would be necessary to test the accuracy of the tachograph. Lastly, the trial justice noted that although the trial justice in the first trial had indeed admitted such evidence, she was entitled to exercise her own independent discretion in the second trial.[4] The plaintiff was still entitled to discuss the acceleration pattern of the truck, including the clear absence of deceleration, which arguably, was even more important to her case. We agree.

In this case, there is no evidence that the trial justice abused her discretion by finding that Kershaw could not render a technical opinion absent qualification as an expert and that plaintiff had failed to lay an adequate foundation. A technical opinion about the operation of the tachograph and the impact of any alleged defect may indeed have been better introduced by an expert pursuant to Rule 702 of the Rhode Island Rules of Evidence. *See ADP Marshall, Inc.,* 784 A.2d at 315; *see also* 92 Dick L.Rev. at 486 (discussing predominant view that in order to establish foundation for tachograph evidence, accuracy must be established).

Further, the jury heard the most compelling information revealed by the tachograph—that Hogan had failed to decelerate upon seeing Michael and his friends, and in fact, had accelerated continuously from the previous traffic signal. Finally, speed may not have been a factor in this accident because it was undisputed that Michael was struck by the rear wheels of the truck and that after the accident he was lying approximately fifty-three feet from the rear of the trailer. Accordingly, we find no error in the exclusion of the tachograph speed recording.

## III

### Spoliation Instruction

■ The plaintiff next argues that the trial justice erred by failing to issue a jury instruction on the doctrine of spoliation. Under the doctrine of spoliation, "the deliberate or negligent destruction of relevant evidence by a party to litigation may give rise to an inference that the destroyed evidence was unfavorable to that party." *State v. Barnes,* 777 A.2d 140, 145 (R.I. 2001) (quoting *Tancrelle v. Friendly Ice Cream Corp.,* 756 A.2d 744, 748 (R.I.2000)). In support of her argument for admission of the speed recording, plaintiff referred to the doctrine of spoliation. Specifically, plaintiff argued that UPS tampered with the tachograph apparatus such that "certain mechanisms necessary to establish the tachograph evidence were destroyed while in the possession of [UPS]." The trial justice declined to issue the instruction because "there was no explicit request made as to what evidence was the subject of an argument regarding spoliation."

---

4. Although neither party raised the applicability of the law of the case doctrine to the second trial justice's decision to exclude the tachograph speed evidence, the doctrine was mentioned during oral argument. In passing, we note that the law of the case doctrine did not bar the second trial justice from considering the admissibility of the tachograph evidence in the context of the new trial. Evidentiary foundation cannot be established automatically in a second trial after presumably being done in the first trial.

■ "General Laws 1956 § 8–2–38 requires the trial justice to instruct the jury on the law to be applied to the issues raised by the parties." *State v. Briggs*, 787 A.2d 479, 486 (R.I.2001) (quoting *State v. Lynch*, 770 A.2d 840, 846 (R.I.2001)). However, the trial justice is not obligated to issue an instruction where the requesting party has failed to make clear its argument or present any evidence in support of its theory. *See Morinville v. Old Colony Co-operative Newport National Bank*, 522 A.2d 1218, 1222 (R.I.1987) ("A trial justice fulfills his or her obligation to charge the jury properly by framing the issues in such a way that the instructions 'reasonably set forth all of the propositions of law that relate to material issues of fact which the evidence tends to support.' "). In this case, plaintiff implied that defendant mishandled the tachograph such that plaintiff was unable to authenticate the speed recording. By failing to present any further evidence or explanation, plaintiff failed to trigger the trial justice's obligation to issue the requested instruction. ·Thus, the trial justice did not abuse her discretion.

## IV

### Post–Trial Motions

After judgment entered for UPS, plaintiff filed two motions in an attempt to revise the jury verdict. Pursuant to Rule 50(b) of the Superior Court Rules of Civil Procedure, plaintiff first filed a motion for a judgment as a matter of law, or in the alternative a motion for new trial, arguing that (1) the jury instructions should not have addressed Michael's potential comparative negligence, (2) that Hogan was negligent as a matter of law, (3) that the trial justice erroneously precluded the admission of the tachograph speed evidence, and (4) that newly discovered evidence warranted a new trial. The plaintiff then filed a separate motion for a new trial pursuant to Rule 59, or in the alternative Rule 60(b), based on the newly discovered evidence cited in the first motion. The trial justice addressed and denied both of plaintiff's motions at a hearing on December 17, 1999.

### Motion for Judgment as a Matter of Law

■ On appeal, plaintiff argues that the trial justice erred by denying her judgment as a matter of law motion on Hogan's negligence. On a motion for a judgment as a matter of law pursuant to Rule 50, the trial justice:

> " 'considers the evidence in the light most favorable to the nonmoving party, without weighing the evidence or evaluating the credibility of witnesses, and draws from the record all reasonable inferences that support the position of the nonmoving party. * * * If, after such a review, there remain factual issues upon which reasonable persons might draw different conclusions, the motion for [judgment as a matter of law] must be denied, and the issues must be submitted to the jury for determination.' " *Raimbeault v. Takeuchi Manufacturing (U.S.), Ltd.*, 772 A.2d 1056, 1062 (R.I.2001) (quoting *Mellor v. O'Connor*, 712 A.2d 375, 377 (R.I.1998)).

Moreover, "[i]n reviewing a trial justice's decision on a motion for judgment as a matter of law, this Court 'is bound by the same rules and [standards] as the trial justice.' " *Raimbeault*, 772 A.2d at 1063 (quoting *Mellor*, 712 A.2d at 377). Insofar as plaintiff's first motion is based on newly discovered evidence, we reserve discussion of that issue until we review the second motion for new trial.

■ The plaintiff argues that Hogan was negligent as a matter of law. This argument lacks merit. In *Malinowski I*, this Court noted that Hogan was not con-

fronted with a sudden emergency. Instead, the evidence revealed that Hogan had observed the boys from 340 feet, and he perceived the danger, that he sounded his horn and attempted to make eye contact with the boys, and that he did not decelerate. Thus, Hogan arguably appreciated the danger and had a duty to take additional measures to avoid the accident. However, it would still be possible for a reasonable jury to find that Hogan acted with due care and thus, was not negligent. *See Malinowski I,* 727 A.2d at 197–98. During the second trial, Hogan testified to the same events. Taking all the evidence in the light most favorable to plaintiff, it remained entirely possible for the jury to find that despite Hogan's realization of the dangerous situation, that he acted reasonably and was not negligent. Therefore, the trial justice properly rejected plaintiff's claim.

### Motion for a New Trial

■■■■■ The plaintiff's final argument is based on newly discovered evidence, that warrants, in her view, a *third* trial. Pursuant to Rule 59,[5] "a trial justice * * * may grant a new trial * * * 'if the trial justice is satisfied that *newly discovered* evidence has come forward which was not available at the * * * trial and is of sufficient importance to warrant a new trial.'" *Landfill & Resource Recovery, Inc. v. Gelinas,* 703 A.2d 602, 603 (R.I.1997) (quoting *Tillson v. Feingold,* 490 A.2d 64, 66 (R.I. 1985)). "The party appealing an adverse ruling on a motion for a new trial assumes the burden of convincing the [C]ourt on appeal that the trial justice, in considering the motion, overlooked or misconceived

material evidence or was otherwise clearly wrong." *Id.* (citing *Atlantic Paint & Coatings, Inc. v. Conti,* 119 R.I. 522, 532, 381 A.2d 1034, 1039 (1977)). Finally, where a party premises its motion for new trial on newly discovered evidence, she has the burden of showing that it undertook "reasonable diligence in attempting to discover the * * * evidence that [s]he now asserts was 'newly discovered' for use at the original trial." *Cronan ex rel. State v. Cronan,* 774 A.2d 866, 881–82 (R.I.2001) (citing *State v. Bassett,* 447 A.2d 371, 375 (R.I. 1982)).

The plaintiff presented arguments in support of her motion for a new trial in five supplemental memoranda to the court. To summarize, plaintiff points out that in 1992, an original analysis of the tachograph evidence in the case was made by DVD corporation, a California company. The plaintiff wished to have DVD reexamine the tachograph in the second trial, but relied on UPS's representation that it no longer was in business. In December 1999, plaintiff "discovered" that DVD was still in business in California, though it had moved since 1992. After the second trial, plaintiff submitted the original DVD report to a second company, Tachograph Analysis Consultants Limited (TACL), which gave its opinion that the tachograph was in such poor condition that it suggested someone had tampered with it. Thus, plaintiff claimed this was "newly discovered evidence" suggesting that (a) UPS officials had lied about DVD's existence; and (b) the report issued by TACL supported plaintiff's spoliation argument and warranted a new trial.

---

**5.** The plaintiff moves for a new trial alternatively pursuant to Rule 60(b) of the Superior Court Rules of Civil Procedure. Rule 60(b) provides that:
  "On motion and upon such terms as are just, the court may relieve a party * * *

from a final judgment * * * for * * * newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b)."

The trial justice disagreed because (1) the evidence presented by plaintiff was not presented in the proper form, (2) the evidence could have been discovered earlier if plaintiff had exercised reasonable diligence, and (3) the evidence "discovered" was not material enough to affect the outcome of the trial.

The plaintiff has presented no evidence that the trial justice misconceived or overlooked material evidence or was otherwise clearly wrong in denying the plaintiff's motion for new trial based on newly discovered evidence.

### Conclusion

Accordingly, the plaintiff's appeal is denied and dismissed and the judgment of the Superior Court is affirmed. The papers in the case are remanded to the Superior Court.